1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALEXANDER FRICKE, | ) | 1:04-cv-5648-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| v. | ) | |
| | ) | ORDER DIRECTING THE ENTRY OF |
| JO ANNE B. BARNHART, | ) | JUDGMENT FOR DEFENDANT JO ANNE B. |
| Commissioner of Social | ) | BARNHART, COMMISSIONER OF SOCIAL |
| Security, | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | ALEXANDER FRICKE |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff is represented by counsel and is proceeding in
forma pauperis with an action seeking judicial review of a final
decision of the Commissioner of Social Security (Commissioner)
denying Plaintiff's application for a period of disability and
disability insurance benefits (DIB) under Title II of the Social
Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the
parties have consented to the jurisdiction of the Magistrate
Judge to conduct all proceedings in this matter, including
ordering the entry of final judgment.[1] The matter is currently

---

[1] Judge Wanger ordered the case reassigned to the undersigned Magistrate Judge on November 17, 2004.

1

before the Court on the parties' briefs, which have been

submitted without oral argument to the Honorable Sandra M.

Snyder, United States Magistrate Judge.

PRIOR PROCEEDINGS

On April 25, 2002, Plaintiff applied for a period of

disability and disability insurance benefits (DIB) under Title II

of the Act, alleging disability beginning on September 19, 2000,

because of type 2 diabetes, peripheral neuropathy, lower back

injury, and surgery on his hand for ganglion cyst. (A.R. at 83-

85, 89.) Plaintiff's claim was denied initially and on

reconsideration. (Id. at 56-59, 63-66.) Plaintiff requested a

hearing before an administrative law judge (ALJ) of the Social

Security Administration (SSA). On September 18, 2003, Plaintiff

appeared with an attorney and vocational expert (VE) and

testified before the ALJ, Richard P. Laverdure. (A.R. at 12.) On

November 10, 2003, the ALJ denied Plaintiff's application for

benefits. (Id. at 12-17.) Plaintiff sought review of the ALJ's

decision by the Appeals Council. On February 27, 2004, the

Appeals Council denied Plaintiff's request for review. (A.R. 4-

6.)

On April 29, 2004, Plaintiff filed the complaint in the

instant action; the administrative record was lodged by Defendant

on September 21, 2004. On February 7, 2005, Plaintiff filed an

opening brief. On March 4, 2005, Defendant filed a brief in

opposition. On March 21, 2005, Plaintiff filed a reply brief.[2]

///

---

[2] Both parties' briefs omit a full statement of facts and a full summary of the administrative findings; thus, all the briefs violate the Court's scheduling order.

1       ADMINISTRATIVE FINDINGS

2       The ALJ concluded that Plaintiff's diabetes mellitus with

3  peripheral neuropathy that was controlled, status post right hand

4  ganglion cyst removal, and a history of low back pain with

5  degenerative changes were in combination severe but did not meet

6  or equal any listed impairment; the alleged intensity,

7  persistence, and functionally limiting effects of Plaintiff's

8  disorders were not entirely credible; Plaintiff retained the

9  residual functional capacity (RFC) for sedentary work with

10 frequent fingering and feeling bilaterally;[3] and Plaintiff

11 retained the RFC to perform his past relevant work of manager of

12 a financial institution as it was customarily performed in the

13 national economy at the sedentary level. Thus, Plaintiff was not

14 disabled at any time through the date of the decision. (A.R. 16-

15 17.)

16       ISSUES PRESENTED

17       Reference to the parties' briefs reveals that the following

18 issues are presented for decision:

19       1) Whether the ALJ's review of Plaintiff's credibility was

20 made according to correct legal standards, supported by

21 substantial evidence, and reflected in adequate findings;

22       2) Whether the ALJ's finding of frequent use of the right

23

24       [3]In the course of the decision, the ALJ stated that Plaintiff was
25 precluded from frequent fingering/feeling with the right upper extremity.
   (A.R. 14.) However, he also stated that Plaintiff could engage in frequent
   fingering and feeling bilaterally (A.R. 13), and that Plaintiff had the RFC
26 for sedentary work with frequent fingering and feeling bilaterally (A.R. 16.)
   Because the first conclusion of preclusion <u>from</u> frequent fingering and feeling
27 did not logically flow from the evidence being summarized by the ALJ in
   connection with the conclusion, the Court concludes that the decision of the
28 ALJ is reasonably interpreted as permitting frequent fingering and feeling
   bilaterally.

upper extremity was supported by substantial evidence and accompanied by adequate findings;

3) Whether substantial evidence supported the ALJ's finding that the diabetes was controlled;

4) Whether the ALJ erred in concluding that Plaintiff's arthritis was not disabling at steps III and V;

5) Whether the finding that Plaintiff could perform his past relevant work was supported by substantial evidence in light of the VE's testimony that it required constant fingering;

6) Whether the ALJ erred in failing to consider or make findings regarding the applicability of Listing 9.08;

7) Whether the ALJ erred in failing to consider the effect of Plaintiff's obesity on equivalence of a listing;

8) Whether the ALJ erred in failing to clarify the treating physician's opinion regarding the cessation of total disability; and

9) Whether new evidence in the form of a statement from the claimant dated October 20, 2004, should be considered.

FACTS

I. <u>Plaintiff's Testimony at the Hearing</u>

Plaintiff, born on March 10, 1946, weighed 205 pounds, was five feet and seven and one-half inches tall, and was right-handed. He last worked in September 2000, quitting his job as a company branch credit manager or administrative assistant because of his health issues, joint pain, and swollen feet. (A.R. 22-23, 28-29.)

His lower middle back pain had resolved somewhat since it was acute in September 2000; Plaintiff had pain once or twice

daily for an hour or two precipitated by bending or picking up things too much; Ibuprofen helped the pain. (A.R. 36-37.)

Plaintiff had been diagnosed as diabetic since May 1999; he still experienced constant tingling, numbness, and loss of strength in his hands. (A.R. 37.) He did not have much strength to grab things, and although his handwriting was acceptable, it was more difficult for him to write; he could write ten minutes at most and keyboard fifteen minutes. (A.R. 38-39.) Wearing shoes caused swelling, pressure, and pain in his feet, with a constant sensation of needles pricking him; Neurontin helped him. (A.R. 39-40.)

Plaintiff used a cane at the hearing and had been using it for a year without a doctor's prescription for maintaining his equilibrium. He could sit for forty-five minutes without having to stand and walk; he could walk or stand ten minutes before foot pain caused him to have to sit and rest for five or ten minutes; and he could lift ten pounds at most. He could trim bushes for fifteen minutes and then rest for ten minutes before resuming the activity. (A.R. 40-45.) He vacuumed and washed dishes. (A.R. 46.)

II. VE's Testimony

Vocational expert Thomas Dachelet testified after reviewing the vocational records and hearing Plaintiff's testimony. He opined that one with Plaintiff's age, education, and experience with a sedentary RFC with limits in both upper extremities to frequent fingering and feeling could perform the position of manager, SVP eight, with fifty percent of the positions being sedentary. If the assumptions were the same but the left upper extremity could frequently finger and the right upper extremity

5

could only occasionally finger, Plaintiff could not perform his
past relevant work as customarily performed in the national
economy because those jobs would require frequent to constant
fingering with both hands. (A.R. 47-52.)

III. Medical History

A ganglion cyst on the right wrist was surgically removed in
February 2001 and healed with slow improvement. A consultative
examination in July 2002 revealed signs of a ganglion cyst on the
right wrist (A.R. 165, 127-31.)

Plaintiff suffered low back pain in 2000, took anti-
inflammatory medications and muscle relaxants, and underwent
physical therapy. An x-ray of the lumbosacral spine taken on
September 20, 2000, revealed a mild joint space narrowing at L4-5
and L5-S1; no fracture or misalignment; otherwise maintained disc
spaces; and intact pedicles. There was no evidence of acute bony
injury. Symptoms improved in January 2001. A lumbar spine study
in July 2002 revealed narrowing of the L-4,5 and L-5, S-1 disc
spaces, moderately severe facet joint disease at L-4-5, but no
evidence of spondylolysis or spondylolisthesis. In July 2002, a
consultative internal medicine exam revealed restricted motion in
the back with no neurological deficits in the lower extremities.
Plaintiff denied any radiculopathy and indicated that his back
had greatly improved, with pain only when he occasionally did too
much activity or twisted in a certain direction; the impression
was resolving right lower back pain. (A.R. 127-131, 133, 171,
173, 184-85, 201.)

Abnormal glucose test results revealed diabetes mellitis.
(A.R. 212.) It was not well-controlled in September 2000. (A.R.

189.) A consultative internal medicine exam performed by Dr.
Steven Stoltz on July 27, 2002, noted Plaintiff's complaints of
pain in the feet worsened by standing or prolonged walking and
the loss of hair mid-calf on both lower extremities. Plaintiff
demonstrated normal grip strength. The impression was some
diabetic neuropathy, mainly in the feet, permitting standing or
walking two to four hours with normal rest breaks, with no
restrictions on lifting or carrying. (A.R. 127-31.) Motor nerve
conduction studies performed on December 31, 2002, revealed
findings suggestive of moderate mixed sensorimotor (axonal type)
peripheral neuropathy in the lower extremities, and mild sensory
peripheral neuropathy in the right upper extremity; this was
consistent with diabetic polyneuropathy, and exercise and aqua
therapy as tolerated were recommended. (A.R. 214-15.)

Myocardial imaging revealed that on October 18, 2002,
Plaintiff had normal ventricular uptake, with no significant
regional abnormalities in the wall motion. (A.R. 193, 216.)

Plaintiff reported a history of mild obesity to the
consultative internal medicine examiner on July 27, 2002, and
mild abdominal obesity was noted. (A.R. 127.)

SCOPE AND STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).
Substantial evidence means "more than a mere scintilla,"
Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

7

1  preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10
2  (9th Cir. 1975). It is "such relevant evidence as a reasonable
3  mind might accept as adequate to support a conclusion."
4  <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record
5  as a whole, weighing both the evidence that supports and the
6  evidence that detracts from the Commissioner's conclusion; it may
7  not simply isolate a portion of evidence that supports the
8  decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).
9  It is immaterial that the evidence would support a finding
10 contrary to that reached by the Commissioner; the determination
11 of the Commissioner as to a factual matter will stand if
12 supported by substantial evidence because it is the
13 Commissioner's job, and not the Court's, to resolve conflicts in
14 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th
15 Cir. 1975).

16      In weighing the evidence and making findings, the
17 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>
18 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
19 review the whole record and uphold the Commissioner's
20 determination that the claimant is not disabled if the Secretary
21 applied the proper legal standards, and if the Commissioner's
22 findings are supported by substantial evidence. <u>See,</u> <u>Sanchez v.</u>
23 <u>Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th
24 Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court
25 concludes that the ALJ did not use the proper legal standard, the
26 matter will be remanded to permit application of the appropriate
27 standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).
28 ///

ANALYSIS

I. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[4] 2) whether solely on

---

[4] All references are to the 2003 version of the Code of Federal Regulations unless otherwise noted.

the basis of the medical evidence the claimed impairment is
severe, that is, of a magnitude sufficient to limit significantly
the individual's physical or mental ability to do basic work
activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the
basis of medical evidence the impairment equals or exceeds in
severity certain impairments described in Appendix I of the
regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant
has sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and
5) whether on the basis of the applicant's age, education, work
experience, and residual functional capacity, the applicant can
perform any other gainful and substantial work within the
economy, 20 C.F.R. § 404.1520(f).

        II. <u>Plaintiff's Subjective Complaints</u>

        The Court rejects Plaintiff's contention that the ALJ erred
in his credibility findings concerning Plaintiff's need for a
cane; failed to consider Plaintiff's cooperation with the SSA,
his earnings record, and other unspecified testimony and
allegations; failed fully to report Plaintiff's complaints
regarding the nature and degree of hand limitations, foot
swelling and secondary limits, and ambulation problems with poor
balance; and made insufficient and inaccurate findings regarding
Plaintiff's not having aggressive treatment.

        The existence and severity of a person's reaction to a
physical ailment, such as the existence and severity of pain, are
subjective phenomena, the extent of which cannot be objectively
measured. <u>Byrnes v. Shalala</u>, 60 F.3d 639, 642 (9th Cir. 1995). In

10

order to reject a claimant's subjective complaints, the ALJ must
provide specific, cogent reasons for the disbelief. <u>Lester v.
Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant
introduces medical evidence of an underlying impairment that
could reasonably be expected to produce some degree of the
subjective symptoms, the Commissioner may not discredit the
claimant's testimony as to subjective symptoms merely because
they are unsupported by objective evidence such as objective
medical findings. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th
Cir. 1996). Unless there is affirmative evidence tending to show
that the claimant is malingering, the reasons for rejecting the
claimant's testimony must be clear and convincing, and the ALJ
must set forth the rejection by identifying what testimony is not
credible and what evidence undermines the claimant's complaints.
<u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the adjudicator
must be properly supported by the record and must be sufficiently
specific to allow a reviewing court to conclude that the
adjudicator rejected the claimant's testimony on permissible
grounds and did not arbitrarily discredit a claimant's testimony.
<u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46; <u>Byrnes v. Shalala</u>, 60
F.3d at 641-42 (9th Cir. 1995); <u>see</u> 20 C.F.R. § 404.1529(c)
[disability] and 20 C.F.R. § 416.929(c) [supplemental security
income].

Social Security Ruling 96-7p directs the adjudicator to
consider not only objective medical evidence of signs, laboratory
findings, and medical opinions, but also the following factors
when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity
   of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse
   side effects of any medication for pain or other
   symptoms;
5. Treatment, other than medication, for relief of
   pain or other symptoms;
6. Any measures other than treatment used by the
   individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's
   functional limitations and restrictions due to
   pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ expressly stated that he had considered Plaintiff's subjective complaints, including Plaintiff's low back pain; use of a cane for balance; numbness, tingling, and loss of strength in both hands and constant numbness in the fingers of both hands; inability to walk more than ten minutes with use of the cane; and his claimed capacity only to stand for ten minutes, lift up to ten pounds, sit for forty-five minutes, and write and keyboard for about ten minutes. (A.R. 14-15.) The ALJ concluded that although there were medical disorders that could reasonably cause the claimed symptoms, the alleged intensity, persistence, and functionally limiting effects were not entirely credible. (A.R. 15.)

The ALJ stated various reasons for his findings. He concluded that Plaintiff had conservative and symptomatic care, which, although attentive, was not aggressive or intense as would have been consistent with the constant, severe discomfort and limitation claimed by Plaintiff. (A.R. 15.) This finding is supported by the record of physical therapy and medication having ameliorated Plaintiff's pain, and instructions being given for management of diabetes. It is a legitimate reason. An ALJ may

12

rely on the conservative nature of treatment or a lack of
treatment in rejecting a claimant's subjective complaint of pain.
Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). The
Court finds that it has clear and convincing force in the present
case.

The ALJ noted inconsistent statements of Plaintiff,
including his testimony regarding significant physical
limitations on standing, walking, sitting, lifting, and using his
right hand for keyboarding and writing, as compared with his
claims to have vacuumed, washed dishes, and trimmed bushes
occasionally in fifteen-minute intervals; his reports in a
physical therapy questionnaire that he could sit five to six
hours and engage in hobbies of fishing, traveling, and football
games (A.R. 191); his report in June 2002 to a nurse instructor
that he performed yard work and walked five days a week for about
forty minutes (A.R. 154); his testimony that his back pain had
improved; and the nerve conduction study results demonstrating
only mild sensorimotor peripheral neuropathy in the right hand
but not the left. (A.R. 15.)

In this circuit, valid criteria for evaluating subjective
complaints include weak objective support for claims and
inconsistent reporting. Tidwell v. Apfel, 161 F.3d 599, 601-02
(9th Cir. 1998). Inconsistent statements are matters generally
considered in evaluating credibility and are properly factored in
evaluating the credibility of a claimant with respect to
subjective complaints. Thomas v. Barnhart, 278 F.3d 947, 958-59
(9th Cir. 2002). An ALJ may consider inconsistencies either in
the claimant's testimony or between the claimant's testimony and

13

the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999). Further, it is appropriate to consider the inconsistency of a documented improvement with claims of constant pain. Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

It was appropriate for the ALJ to consider the lack of objective indicia of Plaintiff's impairments, including lack of objective clinical findings, inconsistent activities of daily living, use of conservative treatment, extent of efforts to obtain relief, and effectiveness of medications in controlling the symptoms. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain to the extent alleged, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this

1  Court to conclude that the ALJ rejected the claimant's testimony

2  on permissible grounds and did not arbitrarily discredit

3  Plaintiff's testimony.

4      II. <u>Right Upper Extremity</u>

5      Plaintiff asserts that the ALJ's finding that Plaintiff

6  could frequently feel and finger bilaterally is not supported by

7  substantial evidence or accompanied by adequate findings.

8  However, the ALJ relied on the medical record, including nerve

9  conduction studies showing only mild sensorimotor peripheral

10  neuropathy in the right hand but not in the left (A.R. 15) as

11  well as Dr. Stoltz's finding that Plaintiff had normal grip

12  strength and his opinion that Plaintiff retained the functional

13  capacity for work (A.R. 14-15). The ALJ noted the treating

14  physician's opinion that Plaintiff was unable to work from

15  September 2000 through February 2001, but he rejected it because

16  the basis for the opinion had been Plaintiff's back pain

17  (lumbago), which Plaintiff admitted had improved. (A.R. 15.) The

18  record supports this finding. (A.R. 170, 177, 186-87.) The ALJ

19  noted but rejected the opinions of the state agency physicians,

20  who had concluded that Plaintiff's diabetes and low back pain

21  resulted in a medium work RFC with occasional or no postural

22  limitations and no manipulative limitations (A.R. 138-45, 204-11)

23  because they had rendered their opinions before the December 2002

24  nerve conduction studies showing moderate peripheral neuropathy

25  in the lower extremities. (A.R. 15.)

26      The ALJ's rejection of the treating doctor's opinion was

27  appropriate. An ALJ may disregard a treating physician's opinion

28  that is controverted by other opinions only by setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986).

Here, the ALJ gave a specific, legitimate reason for rejecting the treating physician's opinion that Plaintiff was disabled, namely, that the condition upon which the opinion was based had improved. The record supports this finding, which in turn undercuts the treating doctor's opinion because it deprives the opinion of continuing clinical support. It is established that the opinion of a treating physician may be rejected if it is ambiguous and inconsistent or conclusionary in form and not supported by clinical findings. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751. Further, the ALJ noted that the opinion was based on Plaintiff's back pain, a subjective complaint that the ALJ had previously discredited. Where a treating source's opinion is based largely on the Plaintiff's own subjective description of her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ appropriately relied on the opinion of the consulting examining physician, Dr. Stoltz. Reliance on the opinion of a consulting, examining physician is appropriate, and

the opinion of such an expert is substantial evidence, where, as here, it is based on the expert's own examination and clinical findings. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ properly relied on the opinion of the consulting examiner and rejected the state agency physicians' opinions. Generally, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). One important factor in evaluating an expert opinion is the extent to which an acceptable medical source is familiar with the other information in the case record; an opinion should be based on the Plaintiff's condition as a whole. <u>See</u> <u>Erickson v. Shalala</u>, 9 F.3d 813, 816-18 (9th Cir. 1993). Also, a more recent opinion may in some circumstances be entitled to greater weight. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993). Further, it is permissible to rely on the Plaintiff's testimony regarding her impairments in discrediting a treating physician's opinion. <u>Fisher v. Schweiker</u>, 568 F.Supp. 900, 903 (N.D.Cal. 1983).

The record reveals that the nerve conduction studies did postdate the state agency physicians' evaluations of Plaintiff's RFC. (A.R. 127, 145, 211.) The ALJ's rejection of the state agency physicians' opinions because of their lack of awareness of all the pertinent data concerning Plaintiff's condition was supported by substantial evidence and was made pursuant to the pertinent legal standards.

IV. <u>Controlled Diabetes</u>

Plaintiff argues that the finding that Plaintiff's diabetes

with peripheral neuropathy was controlled (A.R. 13) was not
supported by substantial evidence. Although the record does
contain glucose tests indicating the presence of diabetes, the
medical evidence of record does not indicate that the neuropathy
was uncontrolled. The ALJ noted that Plaintiff had been
prescribed medications for the diabetes, Neurontin, and
instructions, forms of conservative treatment. (A.R. 15.)
Plaintiff himself admitted that the Neurontin helped. (A.R. 40.)
Although the ALJ did not advert to Plaintiff's foot problems
(A.R. 153, 155 [dry, cracked heels and toenail fungus]), the only
treatment advised for Plaintiff's feet was to use a file to keep
his toenails shorter, use lotion or cream to moisturize his
heels, and unspecified education for preventive foot care. This
evidence does not require a finding that Plaintiff's diabetes was
uncontrolled.

In summary, the Court concludes that substantial evidence in
the record supported the conclusion that Plaintiff's diabetes was
controlled.

V. Arthritis

Plaintiff argues that the ALJ wrongly found that Plaintiff's
lumbar degenerative arthritis was a history of low blood
pressure, and that the AJ failed to understand the significance
of it at steps three and five of the sequential disability
evaluation. Plaintiff points to various items of evidence in the
record: progress notes in October and November 2000 indicating
back pain and symptoms; progress notes from November and December
2000 consistent with L4-L5 facet disease; and a lumbar spine
study in July 2002 revealing narrowing of the L-4,5 and L-5, S-1

disc spaces, moderately severe facet joint disease at L-4-5, but no evidence of spondylolysis or spondylolisthesis. (A.R. 133, 168-69, 174, 180, 183-84, 189-90.)

The ALJ noted Plaintiff's back pain with degenerative changes and further noted that the changes contributed to limit Plaintiff to sedentary work. However, the ALJ concluded that the condition did not meet a listed impairment and required no further limitations. He relied on the absence of signs of nerve root involvement, conservative treatment, and Plaintiff's testimony at the hearing that the condition was nearly resolved. (A.R. 14.) The record supports the ALJ's conclusion.

VI. <u>Listing 9.08</u>

Plaintiff contends that the ALJ erred in failing to consider or make findings regarding the applicability of Listing 9.08, concerning diabetes.

It is Plaintiff's burden to establish that his impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability

19

1  process. <u>Gonzales v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir.
2  1990).

3      Here, the ALJ evaluated the evidence concerning Plaintiff's
4  diabetes with neuropathy. His evaluation sufficiently detailed
5  the reasoning pursuant to which it was impliedly concluded that
6  Plaintiff's condition did not meet the listing because of the
7  absence of the required neuropathy demonstrated by significant
8  and persistent disorganization of motor function in two
9  extremities resulting in sustained disturbance of gross and
10 dexterous movements, or gain and station. Listing of Impairments,
11 20 C.F.R. Part 404, Subpart P, Appendix 1, § 9.08(A).

12     The Court further notes that Plaintiff suggests the issue of
13 insufficiency of the ALJ's reasoning and decision, but Plaintiff
14 does not offer any theory of how the evidence in the record
15 before the Court combined to meet or equal a listing, and
16 Plaintiff does not point to evidence that shows equality with a
17 listing. Under these circumstances, Plaintiff has not
18 demonstrated that the ALJ erred. <u>See Lewis v. Apfel</u>, 236 F.3d
19 503, 514 (9th Cir. 2001).

20     VII. <u>Obesity</u>

21     The record contains evidence that Dr. Stoltz reported a
22 history of mild obesity and found that Plaintiff had a slightly
23 obese abdomen. (A.R. 127, 129.) Plaintiff was sixty-seven inches
24 tall and weighed 225 pounds. (A.R. 129.) For the first time in
25 these proceedings, Plaintiff argues to this Court that his
26 obesity was required to be factored in to his impairments and
27 equivalence to a listing.

28     Listing of Impairments, 20 C.F.R. Part 404, Subpart P,

Appendix 1, § 1.00(Q) provides that obesity is a medically determinable impairment often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. Further, the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an obese individual has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including assessment of RFC, adjudicators must consider any additional and cumulative effects of obesity.

Unless excusing compliance is necessary to avoid a manifest injustice, when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal to the courts. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999). This is because the ALJ, rather than this Court, is in the optimal position to resolve the any issues regarding a claimant's condition. <u>Id.</u>

Here, the ALJ and Plaintiff's counsel discussed Listing 9.08; the ALJ noted that the evidence submitted to him did not demonstrate significant and persistent disorganization of motor function in two extremities, but he offered to permit counsel to take testimony from medical experts on Plaintiff's meeting the listing. Counsel stated that he did not feel that they needed a medical expert. (A.R. 33-34.)

Under the circumstances of the present case, because Plaintiff has not shown that he raised the issue of obesity

before the ALJ or Appeals Council, Plaintiff has waived his right
to obtain judicial review of the issue here.

Alternatively, the Court determines that Plaintiff failed to
present a clear diagnosis of obesity or to demonstrate to this
Court that he was obese. Plaintiff failed to present evidence
that his obesity resulted in any effect at all upon Plaintiff's
physical or mental ability to do basic work activities or
otherwise had any impact on his functioning. Further, he has
failed to demonstrate any effect on Plaintiff's diabetes.[5]
Plaintiff did not meet his burden of proof of disability.

VIII. <u>Clarification of Opinion</u>

The ALJ noted that the opinion of Dr. Nguyen, the treating
physician, regarding Plaintiff's having been unable to work
between September 2000 through February 2001 failed to reflect
that Plaintiff was unable to work for twelve continuous months.
Plaintiff asserts that the ALJ erred in failing to clarify the
treating physician's opinion regarding the cessation of total
disability.

However, the claimant bears the burden of proving that he is
disabled. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999).
An ALJ is required to recontact a doctor only if the doctor's
report is ambiguous or insufficient for the ALJ to make a
disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e);
<u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). The
ALJ, with support in the record, found the evidence adequate to

---

[5] Claimed balance problems were contradicted by clinical findings of intact motor tone and active motion, normal reflexes that were equal and active bilaterally, full strength in all extremities, and normal gait, all without any mention of the need for or use of a cane. (A.R. 130-31.) There were no abnormal findings associated with Plaintiff's eyes, and Plaintiff was assessed as having a good prognosis. (A.R. 134-35.)

1  make a determination regarding Plaintiff's disability.

2  Accordingly, the ALJ did not have a duty to recontact the

3  doctors.

4       IX. <u>New Evidence</u>

5       Plaintiff attached to his brief a statement from Plaintiff

6  dated October 20, 2004, regarding his symptoms since 1987.

7       Title 42 U.S.C. § 405(g) requires the Commissioner to file,

8  as part of her answer, "a certified copy of the transcript of the

9  record including the evidence upon which the findings and

10 decision complained of are based." The district court "shall have

11 power to enter, upon the pleadings and transcript of the record,"

12 a judgment with respect to the Commissioner's decision. Section

13 405(g) is interpreted to require that the decision rendered by

14 the ALJ be based on evidence in the record. <u>Burkhart v. Bowen</u>,

15 856 F.2d 1335, 1341 (9th Cir. 1988) (holding that the ALJ's

16 reliance on his own experience as to vocational opportunities

17 constituted reliance on evidence outside the record and resulted

18 in denial of the aggrieved party's right of cross-examination, a

19 central component  of due process of law).

20       Section 405(g) further provides in pertinent part:
         The court may... at any time order additional evidence
21       to be taken before the Commissioner of Social Security,
         but only upon a showing that there is new evidence
22       which is material and that there is good cause for the
         failure to incorporate such evidence into the record
23       in a prior proceeding....

24 It is established that it is the burden of the party seeking the

25 Court to consider the evidence to show that the evidence is

26 material and probative of the party's condition at the relevant

27 time period, namely at or before the disability hearing. <u>Sanchez</u>

28 <u>v. Secretary of Health and Human Services</u>, 812 F.2d 509, 512 (9th

23

1  Cir. 1987). Evidence is sufficiently material to require a remand
2  where it bears directly and substantially on the matter in
3  dispute, and it is such that there is a reasonable possibility
4  that the new evidence would have changed the outcome of the
5  Commissioner's determination had it been before the Commissioner.
6  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). To
7  demonstrate good cause, a claimant must demonstrate that the new
8  evidence was unavailable earlier. Mayes v. Massanari, 276 F.3d
9  453, 463 (9th Cir. 2001).

10     Plaintiff has not demonstrated any good cause for his
11  failure to submit the evidence earlier. To the extent that the
12  evidence post-dated the hearing, Plaintiff has not shown that the
13  evidence was material. The Court thus concludes that Plaintiff
14  has not submitted new, material evidence that requires
15  consideration.

16                          DISPOSITION

17     Based on the foregoing, the Court concludes that the ALJ's
18  decision was supported by substantial evidence in the record as a
19  whole and was based on proper legal standards.

20     Accordingly, the Court AFFIRMS the administrative decision
21  of the Defendant Commissioner of Social Security and DENIES
22  Plaintiff's Social Security complaint.

23     The Clerk of the Court IS DIRECTED to enter judgment for
24  Defendant Jo Anne B. Barnhart, Commissioner of Social Security,
25  and against Plaintiff Alexander Fricke.

26  IT IS SO ORDERED.

27  **Dated:   February 22, 2006**          **/s/ Sandra M. Snyder**
    icido3                              UNITED STATES MAGISTRATE JUDGE
28

                                24